# UNITED STATES COURT OF APPEALS
# FOR THE TENTH CIRCUIT

---

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 23-6047 |
| | ) | |
| BARRY B. JACKSON, JR., | ) | |
| | ) | |
| Defendant. | ) | |

---

## APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA, CASE NO.
## CR-22-59-D

## OPENING BRIEF OF DEFENDANT/APPELLANT

---

David Autry, OBA #11600
1021 N.W. 16th Street
Oklahoma City, OK 73106
(405) 521-9600
(405) 521-9669 [fax]
dbautry77@gmail.com

Lawyer for Defendant/Appellant,
Barry B. Jackson, Jr.

ORAL ARGUMENT REQUESTED
Digital/Scanned Documents Attached

July 27, 2023

## TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES..............................................................................iv

PRIOR OR RELATED APPEALS...................................................................1

PARTIES TO THE PROCEEDINGS
AND REFERENCES TO THE RECORD...........................................................1

STATEMENT OF JURISDICTION..................................................................2

STATEMENT OF THE ISSUE........................................................................2

STATEMENT OF THE CASE..........................................................................3

STATEMENT OF THE FACTS........................................................................6

SUMMARY OF THE ARGUMENT.................................................................9

**PROPOSITION I**

**MR. JACKSON'S CONVICTION SHOULD BE
REVERSED WITH INSTRUCTIONS TO DISMISS
THE CHARGE BECAUSE THE STATUTE UNDER
WHICH HE STANDS CONVICTED, 18 U.S.C.
§ 922(G)(9), IS UNCONSTITUTIONAL UNDER
THE SECOND AMENDMENT.................................................................10**

Standard of Review......................................................................................10

Portion of the record where the Issue was raised and ruled upon..........10

ARGUMENT..................................................................................................11

1.  The Bruen test............................................................................................11

i

2.  The district court's ruling.................................................................13

3.  Other arguments made by the government not
addressed in the district court's order.....................................20

    a.  Surety statutes.................................................................20

    b.  The common law...........................................................23

    c.  Reconstruction era statutes.........................................23

    d.  Concurring opinions of Justices Alito
    and Kavanaugh................................................................24

4.  Conclusion..........................................................................................25

**PROPOSITION II**

**FIREARMS CONNECTED TO MR. JACKSON MONTHS
AFTER THE INCIDENT GIVING RISE TO THE CHARGE
COULD NOT BE USED TO SET THE BASE OFFENSE
LEVEL OR THE ENHANCEMENT FOR POSSESSING
FIVE FIREARMS...............................................................................27**

Standard of Review.................................................................................27

Portion of the record where the issue was raised and ruled upon............28

Argument..................................................................................................29

CONCLUSION.........................................................................................33

STATEMENT REGARDING ORAL ARGUMENT..............................33

CERTIFICATE OF MAILING AND ELECTRONIC SERVICE...........34

CERTIFICATE OF DIGITAL SUBMISSIONS.....................................34

CERTIFICATE OF COMPLIANCE........................................................................35

**ATTACHMENTS**

1) Judgment in a Criminal Case (filed March  23, 2023)(Doc. 69)

2) Notice of Appeal (filed April 3, 2023)(Doc. 71)

# TABLE OF AUTHORITIES

**PAGE**

**CASES:**

*Class v. United States,* 583 U.S.___, 138 S.Ct. 798 (2018)....................................2, 9

*District of Columbia v. Heller,* 554 U.S. 570 (2008).....................15, 16, 17, 18, 24

*In re United States,* 578 F.3d 1195 (10th Cir. 2009)
(Murphy, J., dissenting)...........................................................13, 17, 18, 19

*Kantor v. Barr,* 919 F.3d 437 (7th Cir. 2019)
(Barrett, J., dissenting)..............................................................17

*New York Rifle & Piston Ass'n, Inc. Bruen,* 597 U.S.___,
142 S.Ct. 2111 (2022)..............................................................passim

*Peugh v. United States,* 569 U.S. 530 (2013)..........................................27

*Range v. Attorney General,* 69 F.4th 96 (3rd Cir. 2023)(en banc)....................14, 16

*State of Oklahoma v. Barry B. Jackson, Jr.*
*and Marie Antoinette Jackson,* Oklahoma
County Case No. CF-2-22-109...................................................8

*Stinson v. United States,* 508 U.S. 36 (1993)..........................................31

*United States v. Bullock,* ___F.Supp.3d___,
No. 3:18-CR-165-CRW-FKB, 2023 WL 4232309
(S.D. Miss. June 28, 2023)..............................................................14, 17

*United States v. Castleman,* 572 U.S. 157 (2014)...................................20

*United States v. Charles,* No. MO:22-CR-154-DC,
2022 WL 4913900 (W.D. Tex. Oct. 3, 2022)..........................................15

*United States v. Conlan,* 500 F.3d 1167 (10th Cir. 2007)........................................27

*United States v. Daniels,* ___F.Supp.3d___,
2022 WL 2654232 (D. Miss. July 8, 2022)....................................................15

*United States v. Gantt,* 679 F.3d 1240 (10th Cir. 2012)..........................................28

*United States v. Garcia,* 946 F.3d 1191 (10th Cir. 2020).................................30, 31

*United States v. Haley,* 529 F.3d 1308 (10th Cir. 2008)..........................................27

*United States v. Hampshire,* 95 F.3d 999 (10th Cir. 1996).....................................10

*United States v. Hayes,* 555 U.S. 415 (2009)............................................................20

*United States v. Jackson,* No. CR 22-59-D
(W.D. Okl. July 22, 2022)...............................................................................4, 11

*United States v. Parlor,* 2 F.4th 807 (9th Cir. 2021)
(Berzon, J., dissenting)........................................................................................31

*United States v. Quiroz,* No. PE:22-CR-00104-DC
(W.D. Tex. September 19, 2022).........................................................................26

*United States v. Rahimi,* 61 F.4th 443 (5th Cir. 2023),
*cert. granted* No. 22-915 (June 30, 2023).......................................................26

*United States v. Sayad,* 589 F.3d 1110 (10th Cir. 2009).........................................28

*United States v. Smith,* 208 F.3d 1187 (10th Cir. 2000)..........................................10

*United States v. Svacina,* 137 F.3d 1179 (10th Cir. 1998)......................................30

*United States v. Verdin-Garcia,* 516 F.3d 844 (10th Cir. 2008)............................27

*United States v. Wall,* 180 F.3d 641 (5th Cir. 1999)................................................30

*United States v. Windle,* 74 F.3d 997 (10th Cir. 1996)............................................30

*Voisine v. United States,* 579 U.S. 686 (2016).......................................................20

**U.S. Constitution:**

U.S. Const. Amend. II......................................................................................passim

U.S. Const. Amend. XIV..................................................................................24

**STATUTES:**

18 U.S.C. § 922(g)(9)........................................................................................passim

18 U.S.C. § 924(a)(1)(D)....................................................................................21

18 U.S.C. § 924(a)(2).........................................................................................21

18 U.S.C. § 3742(a)(b)........................................................................................2

28 U.S,.C. § 1291...............................................................................................2

**FEDERAL RULES**

Fed.R.App.P. 4(b)(1)(A)......................................................................................2

**UNITED STATES SENTENCING GUIDELINES**

USSG § 2K2.1 cmnt. N. 14(E)(ii).......................................................................30, 31

**ARTICLES**

*Domestic Violence and the Home-Centric Second Amendment,*
27 Duke J. of Gender Law & Policy 45 (2020), Joseph Blocher............................16

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff/Appellee, | ) | |
| | ) | |
| v. | ) | Case No. 23-6047 |
| | ) | W.D. Okl. No. CR-22-59-D |
| BARRY B. JACKSON, JR., | ) | |
| | ) | |
| Defendant/Appellant. | ) | |

### PRIOR OR RELATED APPEALS

There are no prior or related appeals with respect to Mr. Jackson or this case.

### PARTIES TO THE PROCEEDINGS AND REFERENCES
### TO THE RECORD

The United States was the Plaintiff in the district court and is the Appellee. Barry B. Jackson, Jr., an individual, was the Defendant in the district court and is the Appellant.

References to the record will be designated "ROA I at___" and "ROA II at ___" for publicly filed documents and sealed pleadings in the appellate record, respectively. References to the transcript of the change of plea hearing will be "CP. Tr.", followed by the page number. References to the transcript of the sentencing hearing will be "S.Tr.", followed by the page number. The transcripts

1

for the change of plea hearing and the sentencing hearing are found at Volume III

of the record on appeal ("ROA III").    References to entries on the district court

docket sheet are designated "Doc." followed by the docket entry number.

## STATEMENT OF JURISDICTION

In this appeal, Mr. Jackson challenges whether 18 U.S.C. § 922(g)(9),

which prohibits those convicted of domestic violence misdemeanors from

possessing firearms, is constitutional under the Second Amendment.  A defendant

may attack the constitutionality of the statute under which he was convicted on a

guilty plea on appeal, even if he entered into a plea agreement which waived

certain rights to appeal, but did not explicitly forfeit a constitutional challenge.

*Class v. United States,* 583 U.S.___, 138 S.Ct. 798, 803-07 (2018).  In this case,

there was no plea agreement.

Should Mr. Jackson's constitutional challenge fail, Defendant contests the

procedural and substantive reasonableness of his sentence.  As noted, there is no

plea agreement in this case, let alone one that contains a waiver of appellate

rights.

This appeal is lodged pursuant to Fed.R.App.P. 4(b)(1)(A).  This Court has

jurisdiction under 18 U.S.C. § 3742(a)(b) and 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

1)  Must Mr. Jackson's conviction be vacated with instructions to dismiss the charge because 18 U.S.C. § 922(g)(9) is unconstitutional under the Second Amendment test of *New York Rifle & Pistol Ass'n, Inc. v. Bruen,* 597 U.S.___, 142 S.Ct. 2111 (2022)?

2)  Should Defendant's constitutional challenge to his conviction fail, is his 72 month sentence procedurally unreasonable because the base offense level was set incorrectly, and because the special offense characteristic enhancement for the number of firearms possessed was found improperly?  Does the procedural unreasonableness of Mr. Jackson's sentence also make his sentence substantively unreasonable?

## STATEMENT OF THE CASE

On February 15, 2022, Mr. Jackson was indicted for illegally possessing two firearms (9 mm handguns)  after having suffered a 2008 Kansas misdemeanor conviction for domestic violence.  (ROA I at 9-10, Doc. 1)  This misdemeanor conviction resulted in a $200.00 dollar fine[1].  (ROA II at 11, Doc. 61)  At the conclusion of his detention hearing, Defendant was ordered released on a $5,000.00 unsecured bond, with conditions.  (ROA I at 3, Docs. 13-15)

---

[1]  The presentence report states that in addition to the $200.00 fine, Mr. Jackson was sentenced to six months in jail.  The materials counsel has reviewed indicate the sentence was the fine only.

Mr. Jackson filed a number of pretrial motions.  (ROA I at 3, Docs. 20-24)

Among them was a motion to dismiss the indictment because the charging statute

is unconstitutional under the Second Amendment.  (ROA I at 3, 12-14, Doc. 22)

The government filed a response.  (ROA I at 4, 15-20, Doc. 30)   On June 23,

2022, the Supreme Court decided *New York Rifle & Pistol Ass'n, Inc. v. Bruen,*

597 U.S.___, 142 S.Ct. 2111 (2022).  In light of *Bruen*, the district court ordered

Defendant to file a supplemental brief on his Second Amendment claim, and for

the government to respond.  (ROA I at 4, 21, Doc. 33)  The parties filed their

briefs as directed.   (ROA I at 4-5, 22-34, 35-47, 48-55, Docs. 36-38)  Mr. Jackson

was permitted to filed a reply to the government's supplemental brief.  (ROA I at

5, 56-70, Docs. 39, 40, 42)  The district court then entered a written order denying

the motion to dismiss.  (ROA I at 5, 71-78, Doc. 45).  *See United States v.*

*Jackson,* No. CR 22-59-D  (W.D. Okl. July 22, 2022)(DeGiusti, J.).

Having failed to get the indictment dismissed,  Defendant pleaded guilty.

There was no plea agreement.  (ROA I at 6, 75-93, Docs. 54-56, ROA III at 3-25,

CP. Tr. 1-23)

A presentence report was ordered.  The Probation Office concluded that Mr.

Jackson's total offense level under the advisory guidelines was 25.  The Probation

Office fixed the base offense level at 20, because at the time of his arrest months

4

after the event giving rise to the charge in the indictment, he was a "prohibited person" who possessed a semiautomatic pistol loaded with two high capacity magazines.

Two levels were added because the Probation Office concluded that as part of the offense, Defendant possessed five firearms.

Four levels were added because one of the firearms Mr. Jackson possessed at the time of the incident giving rise to the charge was used to commit another felony offense, namely, the state crime of discharging a firearm from a moving vehicle (drive-by shooting).

An additional two levels were added because the Probation Office concluded Mr. Jackson used a person under 18 to avoid detection or apprehension for the offense.

The total offense level of 25 was arrived at after three levels were subtracted for acceptance of responsibility. The Probation Office found Defendant to have two criminal history points, which placed him in criminal history category II. He has no previous felony convictions. The advisory guideline range for imprisonment was fixed at 63-78 months. (ROA II at 9-14, 19, 29-35, 39, Docs. 61, 64)

Mr. Jackson objected to the base offense level assigned by the Probation

5

Office.  He also objected to the "number of firearms" enhancement, among other objections.  (ROA II at 43-46, Doc. 64)  These objections were referenced at the sentencing hearing.  Mr. Jackson also requested a downward variance from whatever advisory guideline range the district court found to apply.  (ROA III at 29-44, S.Tr. 4-19, Doc. 79)

At sentencing, the district court overruled Defendant's objections to the presentence report.  (ROA III at 29-38, S.Tr. 4-13, Doc. 79)  Defendant was sentenced to 72 months imprisonment.  Three years of supervised release and a special assessment of $100.00 were also ordered.  (ROA III at 47-49, S.Tr. 23-25, Doc. 79, ROA II at 47-50, ROA I  at 94-101, Docs. 68-70)

## STATEMENT OF THE FACTS

The presentence report sets forth the facts underlying the charge.  (ROA II at 6-8, 26-28, Docs. 61, 64)  They are stated briefly here.

On the night of December 30, 2021, during what was described as a "road rage" incident, it was alleged that Mr. Jackson, who was a passenger in a Dodge Challenger driven by his wife Marie, discharged a firearm at a BMW SUV.  Three of the Jacksons' minor children were also in the vehicle.  The BMW SUV was occupied by a husband and wife, S.H. and J.H.  Both vehicles were traveling west on the Kilpatrick Turnpike in Oklahoma City, near the exit to North MacArthur

Boulevard and to the east of that location by a few miles. The windshield of the BMW was struck by gunfire during the incident. Defendant maintains the BMW SUV was attempting to run his vehicle off the road, and that he only fired the gun to protect his family. S.H. and J.H. said the Dodge Challenger was being driven erratically and aggressively, and that they did nothing to provoke the shooting. Shortly after the shots were fired, the BMW SUV driven by S.H. exited the Kilpatrick Turnpike at the MacArthur Boulevard exit. The Dodge Challenger continued traveling west on the turnpike.

A motorist witnessed the shooting and called 911. He told the 911 dispatcher that the Dodge Challenger from which the shots were fired exited the turnpike at Rockwell Avenue and traveled south. Police soon located the vehicle occupied by Defendant, his wife and children near Rockwell Avenue. Mr. Jackson and his wife Marie initially denied knowledge of any shooting. They were placed in separate police cars, with the three children placed in yet another squad car.

A roadside search of the Dodge Challenger yielded no firearms or ammunition. Two firearms (9 mm handguns) were later found in the backpack worn by one of the children.[2] After this discovery, Marie Jackson told officers

---

[2] These two firearms formed the basis for the 18 U.S.C. § 922(g)(9) charge. (ROA I at 9-10, Doc. 1)

Defendant had fired a gun from the passenger window of the car.  Mr. Jackson

told the police he had been trying to protect his family from the occupants of the

BMW SUV, who were trying to run them off the road.[3]

When Mr. Jackson was arrested on the federal warrant on April 20, 2022 in

Tulsa, Oklahoma, his residence (or, at any rate, a residence at which he was then

staying) was searched by law enforcement.  Three firearms were found, including

a Palmetto PA-15 multi-caliber semi-automatic pistol with two attached magazines

holding a total of thirty-six rounds of 5.56 ammunition.  Other magazines and

ammunition were also discovered in the search.  (ROA II at 6, 28, Docs. 61, 64)

Although unrelated to the actual offense of conviction, the Palmetto PA-15

pistol was used to set the base offense level at 20.  (ROA II at 9, 29, Docs. 61, 64)

The three firearms found in the search of the Tulsa residence were also added to

the two handguns found in the search of the child's backpack on December 30,

2021 to attribute a total of five firearms to Defendant.  This led to a 2-level

enhancement.  (ROA II at 9, 29, Docs. 61, 64)

---

[3] As a result of the shooting incident, Mr. Jackson and Marie Jackson were
charged in state court with using a vehicle in the discharge of a weapon. *State v.
Barry B. Jackson, Jr. and Marie Antoinette Jackson,* Oklahoma County Case  No.
CF-2022-109.  (ROA II at 15, 35)   Mrs. Jackson pleaded guilty and received a
five year deferred sentence.  Mr. Jackson was bound over for trial at the
conclusion of preliminary hearing.  His case is still pending.

## SUMMARY OF THE ARGUMENTS

1)  Mr. Jackson's conviction under 18 U.S.C. § 922(g)(9) for illegally possessing two firearms after having sustained a misdemeanor conviction for domestic violence some fourteen years in the past should be vacated with instructions to dismiss the charge.  This statute is unconstitutional under the Second Amendment.  The text of the Second Amendment protected  Defendant's conduct (or act) in possessing the firearms.  He is one of the "people" protected by the Second Amendment.  No historical analogue to this statutory prohibition existed at the time the Second Amendment was adopted in 1791, or any other relevant historical period.  This is made clear by the test announced in *New York Rifle & Pistol Ass'n, Inc. v. Bruen,* 597 U.S.___, 142 S.Ct. 2111 (2022), and subsequent persuasive authority from other courts construing *Bruen* and other relevant authority.

Although Mr. Jackson pleaded guilty to the charge, there was no plea agreement limiting his appellate rights.  Therefore, he is able to raise this constitutional challenge to his conviction.  *Class v. United States,* 583 U.S.___, 138 S.Ct. 798, 803-07 (2018).

2)  Should Mr. Jackson's constitutional challenge fail, the case should be remanded for resentencing.  The base offense level was set erroneously at 20 for

9

possession of a firearm with a high capacity magazine rather than 14 for a

"prohibited person" who possessed two ordinary 9 mm handguns.   The base

offense level and the addition of 2 levels for the possession of five firearms,

including three firearms found months after the incident giving rise to the offense

of conviction, was improper.  The possession of the three firearms discovered in

Tulsa, including the pistol with a high capacity magazine, cannot be termed

"relevant conduct."

**PROPOSITION I**

**MR. JACKSON'S CONVICTION SHOULD BE REVERSED WITH INSTRUCTIONS TO DISMISS THE CHARGE BECAUSE THE STATUTE UNDER WHICH HE STANDS CONVICTED, 18 U.S.C. § 922(g)(9),  IS UNCONSTITUTIONAL UNDER THE SECOND AMENDMENT.**

**Standard of Review:**  Challenges to the constitutionality of a statute are

reviewed *de novo.  United States v. Smith,* 208 F.3d 1187, 1188 (10th Cir. 2000);

*United States v. Hampshire,* 95 F.3d 999, 1001 (10th Cir. 1996).

**Portion of the record where the issue was raised and ruled upon:**  Mr.

Jackson filed a motion to dismiss the charge because § 922(g)(9) violates the

Second Amendment.  (ROA I at 3, 12-14, Doc. 22)  The government filed a

response.  (ROA I at 4, 15-20, Doc. 30)  The district court ordered the parties to

file supplemental briefs after *New York Rifle & Pistol Ass'n, Inc. v. Bruen*, 597

U.S.___, 142 S.Ct. 2111 (2022) was decided.  (ROA I at 4, 21, Doc. 33)

Supplemental briefs were filed as directed, and Defendant filed a reply to the

government's submission.  (ROA I at 4-5, 22-34, 35-47, 48-55, 56-70, Docs. 36-

42)  The district court denied the motion to dismiss by written order.  (ROA I at 5,

71-78, Doc. 45)  *United States v. Jackson,* No. CR 22-59-D (W.D. Okl. July 22,

2022)(DeGiusti, J.).

## ARGUMENT

### 1.  The *Bruen* test

Prohibitions or restrictions on the Second Amendment right to keep and

bear arms must satisfy a two-part test to pass constitutional muster:

> When the Second Amendment's plain text covers an individual's
> conduct, the Constitution presumptively protects that conduct.
> The government must then justify its regulation by demonstrating
> that it is consistent with the Nation's historical tradition of firearm
> regulation.  Only then may a court conclude that the individual's
> conduct falls outside the Second Amendment's "unqualified
> command."

*Bruen,* 142 S.Ct. at 2129-30 (citation omitted).  Restated, the test boils down to

two questions: 1) Does the plain text of the Second Amendment include the

individual as one of the "people" it protects, and does it sanction the individual's

conduct? (If so, the conduct is presumptively protected, unless the government can

meet the second prong of the test.); and 2) Can the government prove there was a

11

comparable or analogous prohibition or restriction to the modern statute or regulation in question that existed at or around the time the Second Amendment was ratified?  (If the answer is yes, the statute or regulation under attack is constitutional.  If the answer is no, it's not.)  *Bruen,* 142 S.Ct. at 1231-32, 1234.

The *Bruen* majority said that at times, the historical inquiry prong of the test would be "fairly straightforward." *Id.* at 2131.  "For instance, when a challenged regulation addresses a general societal problem that has persisted since the 18[th] century[4], the lack of a distinctly similar historical regulation addressing the problem is relevant evidence that the challenged regulation is inconsistent with the Second Amendment." *Id.*  Ascertaining "whether a historical regulation is a proper analogue for a distinctly modern firearm regulation requires a determination of whether the two regulations are 'relevantly similar.'" *Id.,* at 2132.

In this regard, a court looks to "at least two metrics: *how* and *why* the regulations burden a law-abiding citizen's right to armed self-defense." *Id.* (emphasis added)  "Analogical reasoning requires only that the government identify a well-established and representative historical analogue, not a historical twin.  So even if a modern day regulation is not a dead ringer for historical

---

[4]  Such as, for example, domestic violence.

12

precursors, it still may be analogous enough to pass constitutional muster." *Id.* However, the farther removed in time a regulation or prohibition is from at or around the time the Second Amendment was adopted in 1791, the less likely it will be classified as a "well-established and representative historical analogue." *Bruen,* 142 S.Ct. at 2132.

Here, the statute used to prosecute Mr. Jackson went into effect in 1996, over 200 years after the Second Amendment was adopted. Absent a strong historical analogue (and none exists, as discussed *infra*), this bodes ill for a conclusion that § 922(g)(9) is constitutional. *In re United States,* 578 F.3d 1195, 1195-96 (10th Cir. 2009)(Murphy, J., dissenting).

## 2. The district court's ruling

The interesting thing about the district court's denial of Mr. Jackson's Second Amendment claim is that it largely rejected or called into serious question the government's arguments for the constitutionality 18 U.S.C. § 922(g)(9). In the end, the court merely concluded the time was not ripe to declare the statute unconstitutional absent further guidance from the higher courts. (ROA I 72-77, Doc. 45)

The government argued the first prong of the *Bruen* test excluded Defendant from being among "the people" protected by the Second Amendment. By virtue of

13

his misdemeanor domestic violence conviction, he was not the "law abiding citizen" shielded by its umbrella. *Bruen,* 142 S.Ct. at 2131, 2134 (majority opinion), 2156, 2159 (Alito, J., concurring).  (ROA I at 50-52, Doc. 38)

The district court rightly gave this argument short shrift, holding the Second Amendment's "plain text cover[ed]" Defendant and his "conduct."  Ordinary, law abiding citizens have the right to possess handguns in the home for self-defense, and "an individual's right to carry a handgun for self-defense outside the home," as Mr. Jackson did and said he was doing on December 30, 2021.  *Bruen,* 142 S.Ct. at 2122.  (ROA I at 74-75, Doc. 45)  The government's "law abiding citizen" argument "ignore[d] the Supreme Court's emphasis on an individual's conduct, rather than status, to decide if Second Amendment protection exists."  (ROA I at 75, Doc. 45)

The court "decline[d] to read into *Bruen* a qualification that Second Amendment rights belong only to individuals who have not violated any laws." (ROA I at 74-75, Doc. 45)  This view is consistent with *Bruen,* 142 S.Ct. at 2126, and cases construing this aspect of it.  *Range v. Attorney General,* 69 F.4th 96, 101 (3rd Cir. 2023)(en banc); *United States v. Bullock,* ___F.Supp.3d___, No. 3:18-CR-165-CRW-FKB, 2023 WL 4232309 at *20-*21 (S.D. Miss. June 28, 2023); *United States v. Charles,* No. MO:22-CR-154-DC, 2022 WL 4913900, at *2 (W.D. Tex.

14

Oct. 3, 2022).  The district court opined that one of the cases relied on by the

government, *United States v. Daniels,* ___F.Supp.3d___, 2022 WL 2654232, at *2

(D. Miss. July 8, 2022), "did not hold that the Second Amendment protects only

law-abiding citizens," and expressed some doubt on that score.  (ROA I at 75,

Doc. 45)

    The district court also found somewhat problematic the government's

attempt to analogize § 922(g)(9) with "broad arguments that do not address a

history of firearm possession by domestic violence offenders," emphasizing

instead "restrictions historically imposed on felons" and to "surety laws discussed

in *Bruen*."  (ROA I at 75, Doc. 45)  The court did not uphold the statute based on

surety laws being analogous precursors.  The supposed surety law analogue and

other arguments advanced by the government which also went unmentioned in the

district court's order are addressed below in anticipation of arguments the

government may raise in its response brief.  (ROA I 75-77, Doc. 45)

    Nonetheless, the district court  upheld the statute based on dicta in *District

of Columbia v. Heller,* 554 U.S. 570, 626 (2008) regarding the "longstanding

prohibition" "on the possession of firearms by felons."  This dicta somehow

applies by analogy to those convicted of domestic violence misdemeanors.

According to the district court, such individuals "can logically be viewed" as

"relevantly similar to felons" who should be "denied weapons for the same reasons." For this, the district court cited only a law review article from 2020, which predates *Bruen* and its two-part text and history formulation. *See* Joseph Blocher, *Domestic Violence and the Home-Centric Second Amendment*, 27 Duke J. of Gender Law & Policy 45, 55-56 (2020). (ROA I at 76-77, Doc. 45) Without looking to the relevant history at or around the time the Second Amendment was adopted in 1791, or at any other relevant time period to see if § 922(g)(9) has any previous analogues, the district court remarked that "if numerous nonviolent felony offenses carry the resultant prohibition on gun possession, it would be incongruous to give different treatment to misdemeanants convicted of a violent offense, including domestic violence." (ROA I at 77, Doc. 45)

But the difference between a felony and a misdemeanor is all-important in deciding whether *Heller's* dicta, even if it could be relied on, applies to Mr. Jackson. The en banc Third Circuit, in *Range v. Attorney General,* 69 F.4th at 100-101, vacated the defendant's conviction for being a felon in possession of a firearm in part because his prior offense of conviction (false statement to obtain food stamps in violation of Pennsylvania law), although carrying a penalty of up to five years imprisonment, was actually called a "misdemeanor" in Pennsylvania. The court concluded also that, under the *Bruen* test, there was no historical

analogue barring firearm possession for an individual who had been convicted of

such a non-violent offense.  Along the same lines, when she sat on the United

States Court of Appeals for the Seventh Circuit, Justice Barrett, a member of the

*Bruen* majority, dissented in *Kantor v. Barr,* 919 F.3d 437 (7ᵗʰ Cir. 2019) from

affirming a § 922(g)(1) conviction for a defendant with a non-violent prior felony.

*Kantor,* 919 F.3d at 451-462 (Barrett, J., dissenting).  Judge Barrett's dissent was

based on the type of historical analysis later endorsed by the *Bruen* majority.  At

least one district judge has found that § 922(g)(1) is itself unconstitutional under

*Bruen,* regardless of the nature of a defendant's previous felony conviction(s).

*United States v. Bullock, supra.*

The district court in effect conceded that no real historical analogues to

§ 922(g)(9) existed, resting its decision on *dicta only* that by its very language

excludes misdemeanants of any stripe from the sweep of those it says can be

prevented from exercising Second Amendment rights.  Section 922(g)(9) clearly

flunks both parts of the *Bruen* test.  The "longstanding prohibitions on the

possession of firearms by felons or the mentally ill, or laws forbidding the carrying

of firearms in sensitive places such as schools and government buildings, or laws

imposing conditions on the commercial sale of arms," *Heller*, 128 S.Ct. at 2816-

17, do not apply to Mr. Jackson.  Like the defendant in *In re United States,* 578

17

F.3d at 1195-96 (Murphy, J., dissenting and expressing the view that even under

*Heller*, § 922(g)(9) is of dubious constitutionality), Mr. Jackson is not a felon, is

not mentally ill, he did not possess a firearm in a school or public building, and

there was no sale of a firearm.

As alluded to, Judge Murphy noted that the § 922(g)(9) charge "is not under

a longstanding statute prohibiting possession of a firearm," having only gone into

effect in 1996. Judge Murphy's dissent in *In re United States* foreshadowed the

test adopted by the Supreme Court in *Bruen,* 142 S.Ct. at 2154, n. 28:

> We will not address any of the 20th-century historical evidence
> brought to bear by respondents and their amici. As with their
> late 19th-century evidence, the 20th-century evidence presented
> by respondents and their amici does not provide insight
> into the meaning of the Second Amendment when it contradicts
> early evidence.

Section § 922(g)(9) was enacted in 1996 and is not in keeping with the historical

evidence respecting who was allowed to possess or carry a firearm consistent with

the rights protected by the Second Amendment.

The articles cited by the district court undermine the conclusion that

§ 922(g)(9) is sufficiently rooted in relevant historical antecedents. The history is

sadly to the contrary, as the court acknowledged:

> Legal scholars have commented on the paucity of evidence that
> American traditions reached within the home to interfere with

domestic relationships, particularly the marital relationship. *See, e.g.,* Joseph Blocher, *Domestic Violence and the Home-Centric Second Amendment,* 27 Duke J. of Gender Law & Policy 45, 55-56 (2020)("In the context of domestic violence prohibitions, the historical record is problematic, to say the least."); Carolyn B. Ramsey, *Firearms in the Family*, 78 Ohio St. L.J. 1257, 1301 (2017)("Historical support for the exclusion of domestic violence offenders from Second Amendment protection appears rather thin.")  Indeed, in the United States, the common law recognized until the mid-1800s a "right of chastisement" that allowed husbands to inflict corporal punishment on their wives.  *See,* Blocher, *supra* at 56 (citing Mary Anne Franks, *The Cult of the Constitution* 77 (2018); Reva B. Siegel, *"The Rule of Love" : Wife Beating as Prerogative and Privacy,* 105 Yale L.J. 2117, 2121-41 (1996)).

(ROA I at 75-76, Doc. 45)  The absence of historical antecedents (and therefore

constitutional justification) for § 922(g)(9) noted by Judge DeGiusti echoes Judge

Murphy's dissent in *In re United States,* 578 F.3d at 1195-96.

The district court noted that "the Supreme Court has repeatedly addressed

the reach of § 9222(g)(9) without questioning its constitutionality."  (ROA I at 77,

Doc. 45)  This observation does not lend support to the district court's refusal to

declare § 922(g)(9) unconstitutional.  The Supreme Court has not evaluated the

constitutionality of this statute under the *Bruen* test (nor has it opined, under any

test, on whether the statute is "straight-up" constitutional or not).  Its previous

19

pronouncements on § 922(g)(9) lack relevance to the issue presented here.[5]

The district court cited *Voisine v. United States,* 579 U.S 686, 692 (2016)

for the proposition that § 922(g)(9) "applies to a misdemeanant who was convicted

under an assault statute that encompasses 'reckless' conduct." (ROA I at 77, Doc.

45) Again, this has nothing to do with whether § 922(g)(9) would satisfy the

*Bruen* standard. The district court's observation that only Justice Thomas's

dissent in *Voisine* questioned the constitutionality of § 922(g)(9) is unpersuasive,

since the Second Amendment test erected in *Bruen* post-dates *Voisine* by six years.

Justice Thomas's dissent in *Voisine* now commands the Court's majority.

## 3.  Other arguments made by the government not addressed in the district court's order

It is anticipated the government will employ the same (or some of the same)

arguments it made in the district court in an effort to prove § 922(g)(9) is

constitutional. Defendant addresses the arguments that were not mentioned

explicitly in the district court's order.

### a.  Surety statutes

---

[5] *See Voisine v. United States,* 579 U.S. 686, 692 (2016)(discussed below); *United States v. Castleman,* 572 U.S. 157 (2014)(examining what kind of "physical force" is required for a crime to be considered a misdemeanor crime of violence under § 922(g)(9)); and *United States v. Hayes,* 555 U.S. 415 (2009)(evaluating whether a predicate offense for a conviction under § 922(g)(9) must have a "domestic relationship" element).

Like the New York statute found unconstitutional in *Bruen*, which carried criminal penalties for a violation of up to four years imprisonment and a fine of $5,000.00, *Bruen,* 142 S.Ct. at 2122, § 922(g)(9) imposes significant criminal penalties of up to ten years incarceration and a hefty fine.  18 U.S.C. §§ 924(a)(1)(D), 924(a)(2).  Both the New York statute and § 922(g)(9) erected bans on firearm possession.

In contrast, the surety statutes relied on by the government in the district court and by the respondents in *Bruen* did not attach criminal penalties.  Nor did they ban the carrying (or possession) of firearms.[6]  A bond forfeiture was imposed

---

[6] "In the mid-19th century, many jurisdictions began adopting surety statutes that required certain individuals to post bond before carrying weapons in public.  Although respondents seize on these laws to justify the proper-cause restriction, their reliance on them is misplaced.  These laws were not *bans* [emphasis in original] on public carry, and they typically only targeted those threatening to do harm."  (Here, of course, Mr. Jackson was not prohibited from possessing or carrying a firearm because he was threatening to do harm in the present or the future, but due to a fourteen year old misdemeanor conviction for which he received a $200 fine.)

...

"In short, the Commonwealth [of Massachusetts] required any person who was reasonably likely to 'breach the peace,' and who, standing accused, could not prove a special need for self-defense, to post a bond before publicly carrying a firearm."

...

"Contrary to respondents' position, these 'reasonable-cause laws' in no way represented a 'direct precursor' to the proper-cause requirement. ... [T]he surety statutes *presumed* [emphasis in original] that individuals had a right to public carry that could be burdened only if another could make out a specific showing of

for a violation of surety laws. Absent this, a person posting a bond could continue to possess and carry a firearm. Surety laws were infrequently enforced. *Bruen,* 142 S.Ct. at 2148-2150. No legal or factual analogy exists between the civil surety laws discussed in *Bruen* and the ban imposed by § 922(g)(9).

Ths surety statutes analyzed in *Bruen* and invoked by the government in the district court required those who threatened a breach of the peace or went about to the "terror of the people" *while armed* to post a bond. Here, the government charged Mr. Jackson with illegally possessing two handguns not because he had threatened others with one, but due to an almost decade-and-a-half old

---

'reasonable cause to fear an injury, or breach of the peace.' [citation omitted] ... Then, even on such a showing, the surety laws did not *prohibit* [emphasis in original] public carry in locations frequented by the general community." (Again, surety statutes went to a present or future threat of injury or breach of the peace, and did not rest on an old misdemeanor conviction.)

 ...

 "[U]nlike New York's regime, a showing of special need was required only *after* [emphasis in original] an individual was reasonably accused of intending to injure another or breach of the peace. And, even then, proving special need simply avoided a fee rather than a ban." (The parenthetical comments made above apply equally to this passage.)

 ...

 "It is unlikely that these surety statutes constituted a 'severe' restraint on public carry, let alone a restriction tantamount to a ban ... ."

*Bruen,* 142 S.Ct. at 2148-2150.

misdemeanor domestic violence conviction which did not involve the use of a firearm.

### b. The common law

The government maintained § 922(g)(9) is analogous to the common law offenses of "affray," breach of the peace, and the carrying of unusual weapons. (ROA I at 52, Doc. 38)

Common law offenses are not a fitting analogy to § 922(g)(9) largely for the same reasons surety statutes are inapposite. The *Bruen* majority's lengthy discussion of both the English and American common law, particularly as it related to the offenses of causing an affray, breach of the peace, and the like, were aimed at individuals who created difficulties *while and because they were armed. Bruen,* 142 S.Ct. at 2143-2146. Here, the indictment alleged that § 922(g)(9) prohibited Mr. Jackson from possessing a firearm not because he used one in an offensive manner, but because he had a fourteen year old domestic violence misdemeanor conviction in which a firearm was not even brandished, used, or possessed.

### c. Reconstruction-era statutes

The government argued in the district court that Reconstruction-era statutes which made it unlawful for disorderly persons, vagrants, or disturbers of the peace

to bear arms, and which stated any person "may be disarmed if convicted of making an improper and dangerous use of weapons" are historical analogues to § 922(g)(9). *Bruen,* 142 S.Ct. at 2152. (ROA I at 53, n.2, Doc. 38) The analogy does not hold. Again, these statutes refer to those who engage in such conduct *while armed.* This does not describe the offense for which Defendant was indicted, which rested on an  old misdemeanor conviction not involving a firearm.

Reliance on Reconstruction-era statutes would also be inapt in this case because statutes dating from the time of Reconstruction are pertinent to state regulations impinging on the right to possess or carry firearms, not the federal Second Amendment right to bear arms, which dates from 1791. The Fourteenth Amendment enacted in the post-Civil War era made certain provisions of the Bill of Rights, including the Second Amendment, applicable to the states. Mr. Jackson was indicted for violating a federal criminal statute, not a state law.

### d.  Concurring opinions of Justices Alito and Kavanaugh

The government pointed to the concurring opinions of Justices Alito and Kavanaugh. Justice Alito remarked that *Bruen* "decid[ed] nothing about who may lawfully possess a firearm." *Bruen*, 142 S.Ct. at 2157 (Alito, J., concurring). Justice Kavanaugh stated that "[p]roperly interpreted, the Second Amendment allows a 'variety' of gun regulations," citing *Heller,* 554 U.S. at 636 (Kavanaugh,

J., concurring), *Bruen,* 142 S.Ct. at 2162.  (ROA I at 51, Doc. 38)

But Justice Kavanaugh did not cite to § 922(g)(9) as an example of such legitimate limitations.  And Justice Alito's cautionary statement is not reflected in Justice Thomas's majority opinion.  As argued above, *Heller's* dicta, though not purporting to be an exclusive list of those who may rightly be prohibited from possessing firearms, mentions only convicted felons and the mentally ill, not those accused of violating § 922(g)(9) due to a prior misdemeanor conviction who are clean of felony convictions and are of sound mind.  Importantly, the *Bruen* majority, including Justices Alito and Kavanaugh, is clear that from here on out, the constitutionality of any prohibition or limitation on the Second Amendment right to bear arms must be judged through the prism of *Bruen's* text and history test.  Section 922(g)(9) fails that test.

**4. Conclusion**

The district court concluded its order denying Mr. Jackson's Second Amendment challenge with the following:

> Under the circumstances currently presented, where the effect
> of the Supreme Court's decision in *Bruen* on longstanding
> prohibitions such as § 922(g) remains unclear, this Court
> declines to hold that § 922(g)(9) violates the Second Amendment.
> By his motion, Defendant has preserved this issue for future
> decision by a higher court.

(ROA I at 77, Doc. 45)

First, this is hardly a ringing endorsement of the statute's constitutionality.

Second, it inaccurately states that § 922(g), at least with respect to the particular

subsection at issue here, is a prohibition of longstanding.  It dates from less than

thirty years ago.

As found by the district court, Mr. Jackson's possession of the two firearms

which are the subject of the indictment is sanctioned  conduct under the Second

Amendment, and he is one of the people the Second Amendment protects.

However, the district court erred in finding the government proved § 922(g)(9)

had a comparable historical analogue, making it a prohibition consistent with the

Nation's relevant history of firearm regulation.  Section § 922(g)(9) is

unconstitutional in the same way other courts have found certain provisions of 18

U.S.C. § 922(g) to be unconstitutional under *Bruen.  E.g., United States v. Rahimi,*

61 F.4th 443 (5th Cir. 2023), *cert. granted* No. 22-915 (June 30, 2023)(striking

down § 922(g)(8) prohibiting those under a victim protective order from

possessing a firearm); *United States v. Quiroz,* No. PE: 22-CR-00104-DC (W.D.

Tex. September 19, 2022)(striking down § 922(n), which prohibits the receipt or

transfer of firearms to a person under indictment).  The "how" and the "why" of

§ 922(g)(9) – a criminal ban on the possession or carrying of a firearm if one has a

previous misdemeanor conviction for a crime of domestic violence – finds no

relevant historical analogue. *Bruen*, 142 S.Ct. at 2132.

## PROPOSITION II

**FIREARMS CONNECTED TO MR. JACKSON MONTHS AFTER THE INCIDENT GIVING RISE TO THE CHARGE COULD NOT BE USED TO SET THE BASE OFFENSE LEVEL OR THE ENHANCEMENT FOR POSSESSING FIVE FIREARMS.**

**Standard of review:** A sentence is reviewed "for reasonableness under an

abuse-of-discretion standard." *Peugh v. United States,* 569 U.S. 530, 133 S.Ct.

2072, 2080 (2013). "Reasonableness review is a two-step process comprising a

procedural and a substantive component." *United States v. Verdin-Garcia,* 516

F.3d 884, 895 (10th Cir. 2008).

"Procedural reasonableness involves using the proper method to calculate

the sentence. Substantive reasonableness involves whether the length of the

sentence is reasonable given all the circumstances of the case in light of the factors

set forth in 18 U.S.C. § 3553(a)." *United States v. Conlan,* 500 F.3d 1167, 1169

(10th Cir. 2007). Specifically, "[a] sentence is procedurally unreasonable if the

district court incorrectly calculated or fails to calculate the Guidelines sentence,

treats the Guidelines as mandatory, fails to consider the § 3553(a) factors, relies on

erroneous facts, or inadequately explains the sentence." *United States v. Haley,*

529 F.3d 1308, 1311 (10th Cir. 2008).

"[S]ubstantive reasonableness review broadly looks to whether the district court abused its discretion in weighing permissible § 3553(a) factors in light of the totality of the circumstances." *United States v. Sayad,* 589 F.3d 1110, 1118 (10th Cir. 2009). The Court will "deem a sentence unreasonable only if it is arbitrary, capricious, whimsical, or manifestly unreasonable." *United States v. Gantt,* 679 F.3d 1240, 1249 (10th Cir. 2012).

**Portion of the record where the issue was raised and ruled upon:** In his objections to the initial presentence report, Mr. Jackson challenged the base offense level being set at 20. This calculation was founded on the discovery, months after the incident giving rise to the charge, of a pistol holding a large capacity magazine or magazines in Defendant's residence in Tulsa. A total of three firearms were found during the search of the Tulsa residence. Adding these to the two 9mm handguns found on December 30, 2021, the Probation Office attributed five firearms to Mr. Jackson, which resulted in a 2-level increase. Defendant objected to this enhancement because these three firearms were not connected to the offense of conviction, and could not be deemed relevant conduct. (ROA II, p. 9, 29, 43-44, Docs. 61, 64) At sentencing, the district court overruled these objections. (ROA Vol. III, 28-30, 37-38, S.Tr. 3-6, 12-13).

28

**ARGUMENT**

Mr. Jackson was charged with possessing two 9mm handguns on December 30, 2021 in Oklahoma City.  (ROA I at 9, Doc. 1)  When he was arrested on the federal warrant on April 20, 2022 in Tulsa, police searched the residence he was inhabiting.  Three firearms were found, including a pistol holding one or more high-capacity magazines.  Even though these three firearms were not involved in the offense of conviction, the Probation Office set the base offense level at 20 rather than 14, because Defendant possessed, months after the fact and in a different city, a pistol holding one or more high capacity magazines.  Based on these three firearms, the advisory guideline calculation was also increased by 2 levels.  (ROA II at 9, 29, Docs. 61, 64)  Mr. Jackson objected to base offense level of 20 and the 2-level enhancement, because the three firearms found months after the incident giving rise to the charge could not be considered relevant conduct. (ROA II at 43-44, Doc. 64)

In responding to Mr. Jackson's objections, the Probation Office conceded the firearms found in Tulsa months after the fact did not qualify as part of a common scheme or plan, but concluded Defendant's possession of firearms on December 30, 2021 and April 20, 2022 were part of the same course of conduct. Both incidents were similar and evinced regularity.  The time interval between

December 30, 2021 and April 20, 2022 was deemed insignificant.  (ROA II at 43-44, Doc. 64)

The Probation Office cited a number of cases in support of its conclusion. *United States v. Windle,* 74 F.3d 997 (10th Cir. 1996); *United States v. Garcia,* 946 F.3d 1191 (10th Cir. 2020)(behavior pattern of unlawfully possessing multiple firearms over a relatively short period of time satisfies the "same course of conduct" requirement).  According to the Probation Office, two incidents are enough to show regularity.  *United States v. Svacina,* 137 F.3d 1179 (10th Cir. 1998).  However, where over one year separates instances of illegally possessing firearms, the consensus view weighs against a finding of temporal proximity. *Garcia, supra*; *United States v. Wall,* 180 F.3d 641 (5th Cir. 1999).  (ROA II at 44, Doc. 64)  The district court adopted the conclusions of the Probation Office in turning aside Mr. Jackson's objections.

USSG § 2K2.1 cmnt. N. 14(E)(ii) states that the threshold question is whether possession of firearms at a different time and/or location constitutes relevant conduct.  If the evidence shows the two unlawful possession offenses were not part of the same course of conduct or common scheme or plan, then a second instance of illegal firearm possession apart from the specific offense of conviction is not relevant conduct, and the sentencing enhancement is

inapplicable.  USSG § 2K2.1 cmt. N. 14 (E)(ii), referencing USSG § 1B1.3.

"On its face, the commentary [to USSG § 2K2.1] implies that the illegality of possession of a firearm, standing alone, is not enough to establish conduct relevant to the illegal possession of a different firearm, regardless of the specific enhancement at issue."  This commentary "is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of that guideline." *United States v. Parlor,* 2 F.4th 807, 818-21 (9th Cir. 2021)(Berzon, J,, dissenting), *quoting, as to the last passage, Stinson v. United States,* 508 U.S. 36 (1993).

With the exception of the 2020 *Garcia* case, which relied on earlier case law, the authority cited by the Probation Office predates the 2014 commentary relied on here, and do not take it into account.  If the logic of the Probation Office and the district court is credited, then virtually any time a defendant possessed firearms on two or more different occasions, an enhancement relating to the number or type of firearms would be appropriate.  But something more must be shown.  Something other than the possession of firearms months apart, in two different cities, does not support a finding of relevant conduct that could be used to raise the base offense level or impose an enhancement for the number of firearms.  Other than the fact firearms were possessed on two separate occasions,

there is nothing to show these separate incidents of possession were related to the same course of conduct, as opposed to being disparate, unconnected incidents.

The December 30, 2021 incident and the discovery of firearms on April 20, 2022 in another city had nothing to do with one another. One incident of possession did not facilitate the other. The alleged possession of the firearm capable of holding high capacity magazines in Tulsa was not relevant conduct that was part of the offense of conviction, which occurred months earlier in another locale. Nor was the alleged possession of the three firearms found in Tulsa relevant conduct to the two handguns possessed months earlier in Oklahoma City.

The base offense level should have been 14, not 20. Two levels should not have been added for the possession of five firearms. The total offense level should have been 17, not 25. The advisory guideline range should have been 27-33 months, not 63-78 months.

The miscalculation of the advisory guideline range by the district court made the sentence procedurally unreasonable under the authority cited in the standard of review for this proposition of error. This miscalculation also resulted in a substantively unreasonable sentence, because the 72 month sentence of imprisonment given to Mr. Jackson was manifestly unreasonable, and far in excess of what it should have been under the advisory guidelines. Defendant received a

guideline sentence.

Accordingly, if Defendant's conviction is not vacated with instructions to dismiss the charge due to the constitutional infirmity of § 922(g)(9), the case should be remanded for resentencing.

## CONCLUSION

Based on the foregoing argument and authority, Mr. Jackson's conviction for violating 18 U.S.C. § 922(g)(9) should be reversed with instructions to dismiss the charge.  This statute is unconstitutional under the Second Amendment.  Failing that, the case should be remanded for resentencing because the base offense level and the 2-level enhancement for the number of firearms possessed are erroneous.

## STATEMENT REGARDING ORAL ARGUMENT

Mr. Jackson requests oral argument.  This case involves an important constitutional question under the Second Amendment, and this area of law is evolving rapidly.

Respectfully submitted,

/s/ David Autry
David Autry, OBA #11600
1021 N.W. 16th Street
Oklahoma City, OK 73106
(405) 521-9600
(405) 521-9669 [fax]
dbautry77@gmail.com

Lawyer for Defendant,
Barry B. Jackson, Jr.

**CERTIFICATE OF MAILING AND ELECTRONIC SERVICE**

This is to certify that on this 27th day of July 2023, a true and correct copy of the foregoing instrument was served by U.S. Mail, postage prepaid, to Jacquelyn M. Hutzell, AUSA, 210 W. Park Avenue, Ste. 400, Oklahoma City, OK 73102. A copy was also served electronically via CM/ECF to Ms. Hutzell at her Email address. Additionally, a copy was sent via U.S. Mail to Barry B. Jackson, Jr., c/o Grady County Jail, 215 N. 3rd Street, Chickasha, OK 73018.

/s/ David Autry

**CERTIFICATE OF DIGITAL SUBMISSIONS**

I hereby certify that with respect to the foregoing Brief:

1.  All required privacy redactions have been made;

2.  If required to file additional hard copies, that the ECF submission is an exact copy of those documents; and

3.  The ECF submission was scanned for viruses with the most recent version of a commercial virus scanning program, Norton Antivirus 360, last updated on the date of this filing, and that according to the program, it is free of viruses.

/s/ David Autry

## CERTIFICATE OF COMPLIANCE

As required by Fed.R.App.P. 32(a)(7)( C), I certify that this Brief is proportionally spaced and contains 6,296 words.  I relied on my word processor to obtain the count, and it is WordPerfect 8.  I certify that this information is true and correct to the best of my knowledge and belief formed after a reasonable inquiry.

/s/ David Autry

AO 245B (Rev. 09/19)  Judgment in a Criminal Case
Sheet 1

# UNITED STATES DISTRICT COURT

### Western District of Oklahoma

| | |
|---|---|
| UNITED STATES OF AMERICA<br>**v.**<br>BARRY B. JACKSON, JR. | **JUDGMENT IN A CRIMINAL CASE**<br><br>Case Number:  CR-22-00059-001-D<br>USM Number:  96981-509<br><br>David Autry<br>Defendant's Attorney |

## THE DEFENDANT:

☒ pleaded guilty to count(s)  1 of the Indictment

☐ pleaded nolo contendere to count(s)
which was accepted by the court.

☐ was found guilty on count(s)
after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 U.S.C. § 922(g)(9) &<br>18 U.S.C. § 924(a)(2) | Possession of Firearms by a Person Convicted of a Misdemeanor<br>Crime of Domestic Violence | 12/30/2021 | 1 |
| | Criminal Forfeiture | | |

The defendant is sentenced as provided in pages 2 through ___7___ of this judgment.  The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s)

☐ Count(s) _____  ☐ is  ☐ are dismissed on the motion of the United States.

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid.  If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

March 23, 2023
Date of Imposition of Judgment

TIMOTHY D. DeGIUSTI
Chief United States District Judge

March 24, 2023
Date Signed

AO 245B  (Rev. 09/19)  Judgment in Criminal Case
Sheet 2 — Imprisonment

Judgment — Page <u>  2  </u> of <u>  7  </u>

DEFENDANT:      Barry B. Jackson, Jr.
CASE NUMBER:    CR-22-00059-001-D

# IMPRISONMENT

The defendant is hereby committed to the custody of the Federal Bureau of Prisons to be imprisoned for a total term of: **72 months, to run concurrently to any term ultimately imposed in pending state court matters.**

☒  The court makes the following recommendations to the Bureau of Prisons:

It is recommended the defendant participate in the Federal Bureau of Prisons Inmate Financial Responsibility Program at a rate determined by Bureau of Prisons staff in accordance with the program.

If eligible, it is recommended that the defendant be designated to FMC Ft. Worth.

☒  The defendant is remanded to the custody of the United States Marshal.

☐  The defendant shall surrender to the United States Marshal for this district:

  ☐  at _____ ☐ a.m. ☐ p.m. on _____ .

  ☐  as notified by the United States Marshal.

☐  The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

  ☐  By 2 p.m. on _____

  ☐  as notified by the United States Marshal.

  ☐  as notified by the Probation or Pretrial Services Office.

# RETURN

I have executed this judgment as follows:

Defendant delivered on _____ to _____

at _____ , with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____

DEPUTY UNITED STATES MARSHAL

AO 245B (Rev. 09/19) Judgment in a Criminal Case
Sheet 3 — Supervised Release

Judgment—Page ___3___ of ___7___

DEFENDANT:        Barry B. Jackson, Jr.
CASE NUMBER:      CR-22-00059-001-D

# SUPERVISED RELEASE

Upon release from imprisonment, you will be on supervised release for a term of:  **Three (3) years**

## MANDATORY CONDITIONS

1. You must not commit another federal, state or local crime.
2. You must not unlawfully possess a controlled substance.
3. You must refrain from any unlawful use of a controlled substance. You must submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, not to exceed eight (8) drug tests per month.

   ☐ The above drug testing condition is suspended, based on the court's determination that you pose a low risk of future substance abuse. *(check if applicable)*

4. ☐ You must make restitution in accordance with 18 U.S.C. §§ 3663 and 3663A or any other statute authorizing a sentence of restitution. (check if applicable)
5. ☒ You must cooperate in the collection of DNA as directed by the probation officer. *(check if applicable)*
6. ☐ You must comply with the requirements of the Sex Offender Registration and Notification Act (34 U.S.C. § 20901, *et seq.*) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in the location where you reside, work, are a student, or were convicted of a qualifying offense. *(check if applicable)*
7. ☐ You must participate in an approved program for domestic violence. *(check if applicable)*

You must comply with the standard conditions that have been adopted by this court as well as with any other conditions on the attached page.

AO 245B (Rev. 09/19)  Judgment in a Criminal Case
Sheet 3A — Supervised Release

| | | |
|---|---|---|
| | Judgment— 4 of 7 | |

DEFENDANT:       Barry B. Jackson, Jr.
CASE NUMBER:   CR-22-00059-001-D

## STANDARD CONDITIONS OF SUPERVISION

As part of your supervised release, you must comply with the following standard conditions of supervision. These conditions are imposed because they establish the basic expectations for your behavior while on supervision and identify the minimum tools needed by probation officers to keep informed, report to the court about, and bring about improvements in your conduct and condition.

1. You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of your release from imprisonment, unless the probation officer instructs you to report to a different probation office or within a different time frame.
2. After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.
3. You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer.
4. You must answer truthfully the questions asked by your probation officer.
5. You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
6. You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.
7. You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from doing so. If you do not have full-time employment you must try to find full-time employment, unless the probation officer excuses you from doing so. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
8. You must not communicate or interact with someone you know is engaged in criminal activity. If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.
9. If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.
10. You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchakus or tasers).
11. You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.
12. Stricken.
13. You must follow the instructions of the probation officer related to the conditions of supervision.

## U.S. Probation Office Use Only

A U.S. probation officer has instructed me on the conditions specified by the court and has provided me with a written copy of this judgment containing these conditions. For further information regarding these conditions, see *Overview of Probation and Supervised Release Conditions*, available at: www.uscourts.gov.


Defendant's
Signature _____          Date _____

AO 245B(Rev. 09/19)   Judgment in a Criminal Case
Sheet 3B— Supervised Release

| | Judgment—Page __5__ of __7__ |
|---|---|

DEFENDANT:        Barry B. Jackson, Jr.
CASE NUMBER:   CR-22-00059-001-D

# SPECIAL CONDITIONS OF SUPERVISION

The defendant must submit to a search of his person, property, electronic devices or any automobile under his control to be conducted in a reasonable manner and at a reasonable time, for the purpose of determining possession, or evidence of possession, of firearms, controlled substances, drug paraphernalia, and/or drug trafficking at the direction of the probation officer upon reasonable suspicion. Further, the defendant must inform any residents that the premises may be subject to a search.

The defendant shall participate in a program of substance abuse aftercare at the direction of the probation officer to include urine, breath, or sweat patch testing, and outpatient treatment. The defendant shall totally abstain from the use of alcohol and other intoxicants both during and after completion of any treatment program. The defendant shall not frequent bars, clubs, or other establishments where alcohol is the main business. The court may order that the defendant contribute to the cost of services rendered (copayment) in an amount to be determined by the probation officer based on the defendant's ability to pay.

The defendant shall participate in an approved domestic violence program at the direction of the probation officer.

AO 245B (Rev. 09/19) Judgment in a Criminal Case
Sheet 5 — Criminal Monetary Penalties

|  |  | Judgment — Page | 6 | of | 7 |

DEFENDANT:     Barry B. Jackson, Jr.
CASE NUMBER:     CR-22-00059-001-D

## CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

| TOTALS | **Assessment** | **Restitution** | **Fine** | **AVAA Assessment*** | **JVTA Assessment**** |
|---|---|---|---|---|---|
| $ | 100.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 |

☐ The determination of restitution is deferred until _____. An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☐ The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below.  However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| **Name of Payee** | **Total Loss***** | **Restitution Ordered** | **Priority or Percentage** |
|---|---|---|---|
| | | | |

| **TOTALS** | $ _____ | $ _____ | |

☐ Restitution amount ordered pursuant to plea agreement  $ _____

☐ The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f).  All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐ The court determined that the defendant does not have the ability to pay interest and it is ordered that:

☐ the interest requirement is waived for the  ☐ fine  ☐ restitution.

☐ the interest requirement for the  ☐ fine  ☐ restitution is modified as follows:

\* Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018, Pub. L. No. 115-299.
\*\* Justice for Victims of Trafficking Act of 2015, Pub. L. No. 114-22.
\*\*\*   Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

AO 245B (Rev. 09/19) Judgment in a Criminal Case
Sheet 6 — Schedule of Payments

Judgment — Page ___7___ of ___7___

DEFENDANT:        Barry B. Jackson, Jr.
CASE NUMBER:   CR-22-00059-001-D

## SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties is due as follows:

A   ☒   Lump sum payment of $  100.00         due immediately, balance due

        ☐   not later than _____ , or

        ☐   in accordance with   ☐   C,   ☐   D,   ☐   E, or   ☐   F below; or

B   ☐   Payment to begin immediately (may be combined with   ☐ C,   ☐ D, or   ☐ F below); or

C   ☐   Payment in equal _____ *(e.g., weekly, monthly, quarterly)* installments of  $ _____ over a period of
_____ *(e.g., months or years)*, to commence _____ *(e.g., 30 or 60 days)* after the date of this judgment; or

D   ☐   Payment in equal _____ *(e.g., weekly, monthly, quarterly)* installments of  $ _____ over a period of
_____ *(e.g., months or years)*, to commence _____ *(e.g., 30 or 60 days)* after release from imprisonment to a
term of supervision; or

E   ☐   Payment during the term of supervised release will commence within _____ *(e.g., 30 or 60 days)*
after release from imprisonment. The court will set the payment plan based on an assessment of the defendant's
ability to pay at that time; or

F   ☐   Special instructions regarding the payment of criminal monetary penalties:

    If restitution is not paid immediately, the defendant shall make payments of 10% of the defendant's quarterly earnings
during the term of imprisonment.

    After release from confinement, if restitution is not paid immediately, the defendant shall make payments of the greater of
$_____ per month or 10% of defendant's gross monthly income, as directed by the probation officer.  Payments are to
commence not later than 30 days after release from confinement.

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties
is due during the period of imprisonment.  All criminal monetary penalties, except those payments made through the Federal
Bureau of Prisons' Inmate Financial Responsibility Program, shall be paid through the United States Court Clerk for the Western
District of Oklahoma, 200 N.W. 4th Street, Room 1210, Oklahoma City, Oklahoma 73102.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐   Joint and Several

| Case Number<br>Defendant and Co-Defendant Names<br>*(including defendant number)* | Total Amount | Joint and Several<br>Amount | Corresponding Payee,<br>if appropriate |
|---|---|---|---|

☐   The defendant shall pay the cost of prosecution.
☐   The defendant shall pay the following court cost(s):
☒   The defendant shall forfeit the defendant's interest in the following property to the United States:

    All right, title, and interest in the assets listed in the Preliminary Order of Forfeiture dated November 8, 2022 (doc. no. 60).

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) AVAA
assessment, (5) fine principal, (6) fine interest, (7) community restitution, (8) JVTA assessment, (9) penalties, and (10) costs,
including cost of prosecution and court costs.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA,    )
    )
       Plaintiff,    )
    )
v.    )    Case No. CR 22-59-D
    )
BARRY B. JACKSON, JR.,    )
    )
       Defendant.    )

## NOTICE OF APPEAL

Notice is hereby given that Barry B. Jackson, Jr., Defendant in the above-named case, hereby appeals to the United States Court fo Appeals for the Tenth Circuit from the final judgment entered in this action on March 24, 2023.  (Docs. 69, 70).  The sentencing hearing was conducted on March 23, 2023.  (Doc. 68)   Counsel is appointed under the Criminal Justice Act.

Respectfully submitted,

/s/ David Autry
David Autry, OBA #11600
1021 N.W. 16th Street
Oklahoma City, OK 73106
(405) 521-9600
(405) 521-9669 [fax]
dbautry77@gmail.com

Lawyer for Defendant,
Barry B. Jackson, Jr.

1

**Certificate of Electronic Filing and Service**

This is to certify that on this 3rd day of April 2023, I caused the foregoing instrument to be filed with the Clerk of the Court using the ECF System for filing, with electronic service to be made via CM/ECF to Jacquelyn M. Hutzell, AUSA, and to all other counsel of record.  To counsel's knowledge, there are no non-ECF registrants who are counsel in this case.

/s/ David Autry